## BEAN v. INDEPENDENT TORPEDO CO.

(Circuit Court of Appeals, Eighth Circuit. March 9, 1925.)

### No. 6807.

**1. Evidence ⟶527—Testimony held properly excluded as not pertinent to facts shown.**

In an action for death caused by an explosion of nitroglycerine manufactured by defendant, testimony that, unless properly washed, the explosive would sometimes explode without extraneous cause, *held* properly excluded, where there was no evidence that in the case in question it did so explode.

**2. Master and servant ⟶285(2)—Evidence of cause of explosion held insufficient for jury.**

In an action for death of employee, killed by explosion of nitroglycerine stored in building of which he had charge, where there were no living witnesses of the accident, and no evidence from which the cause of the explosion, which, as shown, might have been due to any one of a number of causes, could be determined, the jury could not be permitted to guess at the cause, and to base a finding of defendant's negligence thereon, and a verdict was properly directed for defendant.

In Error to the District Court of the United States for the Eastern District of Oklahoma; Franklin E. Kennamer, Judge.

Action at law by W. T. Bean, executor of the estate of Charles R. Van Dell, deceased, against the Independent Torpedo Company. Judgment for defendant and plaintiff brings error. Affirmed.

J. E. Williams, of Ardmore, Okl. (George A. Ahern, H. H. Brown, and R. B. Brown, all of Ardmore, Okl., on the brief), for plaintiff in error.

G. C. Spillers, of Tulsa, Okl., for defendant in error.

Before LEWIS, Circuit Judge, and VAN VALKENBURGH and FARIS, District Judges.

VAN VALKENBURGH, District Judge. Defendant in error, Independent Torpedo

Company, hereinafter called the defendant, as it was below, maintained a factory near Ringling, Okl., where it manufactured nitroglycerine for use in its business of developing oil and gas wells in the Southern Oklahoma fields. The decedent, Charles R. Van Dell, a man 41 years of age, was an employee of the defendant, and had charge of its business of shooting oil and gas wells in Southern Oklahoma. Van Dell lived at Healdton, in that state. About one-half mile from Healdton the defendant maintained a magazine for the purpose of storing the nitroglycerine used in its business in that field. The building in which the explosive was stored was a small frame structure 10 or 12 feet long, 8 feet wide, and 8 feet high. On the west wall were two shelves, 2 feet in width; the lower being about 3 feet from the floor and the higher about 4½ feet from the floor. On these shelves was placed the nitroglycerine awaiting use, contained in 10-quart cans. On the floor near the opposite wall from the shelving, and in the northeast corner by the door, was a small oil stove, placed there to prevent the nitroglycerine from freezing. This magazine was in charge of Van Dell, who was the representative of the defendant at this point. He exercised his own judgment as to the amount of the explosive to be kept in this building, the method of storing it, the precautions to be taken to keep it from freezing, and in transporting it to the fields for use in shooting wells.

January 29, 1922, an explosion occurred, which killed Van Dell and a companion and completely destroyed the magazine. There were no witnesses. Fragmentary remains of the dead men were found and identified with some difficulty, but with sufficient certainty. Plaintiff in error, as executor of Van Dell's estate, brings this suit against the employer, assigning as negligence failure to use reasonable care to provide Van Dell with a safe place in which to work, "in causing him to store nitroglycerine in one place in excess of 1,500 pounds, and in placing in such storeroom an open fire, as aforesaid, and by the failure on the part of the defendant to use reasonable care to provide the said Charles R. Van Dell with safe instrumentalities with which to work, and by failing to properly wash the nitroglycerine, as herein set out." That part of the petition, to which reference was thereby made, is in the following language:

"Plaintiff would further respectfully show to the court that, after the acid and glycerine oil of which nitroglycerine is composed have been thoroughly mixed, it becomes necessary to wash the same thoroughly, so that all free acid, and especially all sulphuric acid, contained therein, shall have been removed; that free acids, on coming in contact with cans such as were used by the defendant for storing and conveying its nitroglycerine, will eat holes in such cans and cause decomposition to set in, and thereby render such nitroglycerine much more dangerous than if the same is properly washed and all free acids removed therefrom."

At the close of plaintiff's case the court sustained a demurrer to the evidence, and, under the practice prevailing in that jurisdiction, dismissed the case. Plaintiff in error has not sought to rely upon the res ipsa loquitur doctrine, but has set out the specific negligence charged, as above stated. In such case, the burden is upon the pleader to establish the negligence of which he complains, or at least some one of the assignments thereof. By this statement we are not to be understood as holding, by implication, that the doctrine of res ipsa loquitur would have had application in this case. Fulgham v. Midland Valley R. Co., 181 F. 91, 104 C. C. A. 151, L. R. A. 1917E, 1; Canadian Northern Ry. Co. v. Senske, 201 F. 637, 120 C. C. A. 65; Patton v. Texas & Pac. Ry. Co., 179 U. S. 658, 21 S. Ct. 275, 45 L. Ed. 361.

The employee, Van Dell, had had 20 years' experience in this business, had participated in the manufacture of nitroglycerine, was familiar with the process, and with the characteristics of nitroglycerine generally, and had complete charge of the magazine which exploded, to such extent that his wife, on occasion when he was otherwise occupied, visited the magazine to regulate the heat in the building, as required. It was conceded at the hearing that, at least with respect to the stove and the incidents of storage, Van Dell assumed the risks of his employment. It is, of course, true that he assumed all the risks of that employment which he knew and appreciated, or which were so obvious that he must be held to have known and appreciated them, taking into account his age, experience, and degree of intelligence. The main reliance of the plaintiff is upon the charge that the nitroglycerine was improperly washed and not free from acid; that the acid presumably ate holes in the cans, permitting nitroglycerine to leak therefrom. It appears, practically without dispute, that it is not uncommon in all fields and at all times to find leaky cans; that this in itself does not indicate any unusual departure from the normal condition with respect to

this explosive. When leaky cans are found, the contents are emptied into sound cans, and the old cans are dispensed with. This in itself would indicate that the glycerine transferred is not thought to be prohibitively dangerous, because, after being so transferred, it is either allowed to stand, or is used, as the case may be. Of course, it is conceded that handling nitroglycerine is a very hazardous occupation under any circumstances.

However, in the present case it is insisted, and there is some testimony tending to support the contention, that this particular manufacture was of a character that produced leaky cans; the inference being that this was true to an unusual degree and had continued over a considerable period. If this be true, there is every reason to infer that it must have been known to Van Dell, who had the exclusive handling and charge of the explosive, who exercised his own judgment in handling it, and who made no report to his superiors of the faulty character of the product, if it was faulty. Such a situation would furnish strong support for the holding that Van Dell assumed the risk here indicated to the same extent that he is conceded to have assumed other risks, and that he himself was guilty of negligence in permitting that situation to continue, if it did exist, of which he must be presumed to have had knowledge.

[1] But it is unnecessary to base our decision upon that ground. Plaintiff in error offered testimony to the effect that nitroglycerine, when containing too large a percentage of acid, in other words, when improperly washed, may sometimes explode of its own volition. Such testimony is competent in a proper case, but to render it competent it must first be shown that the nitroglycerine did explode of its own volition. Bradford Glycerine Co. v. Kizer, 113 F. 894, 51 C. C. A. 524. There was no evidence in this case that the explosion occurred in that manner. None of the witnesses offered by the plaintiff, and invited by his counsel to give testimony as to the cause of the explosion, could say, under the evidence, what that cause was. All declared that it might have been due to too many causes, under the situation presented, to justify an opinion; in other words, that opinion would have been a mere guess. As heretofore stated, there were no eyewitnesses, and no one knows what happened, except that an explosion occurred. It is in evidence that that explosion might have been occasioned by various physical causes. The shelving may have given way, causing the cans to fall. The decedent himself may have dropped a can; the flame in the room from the stove may perhaps have been a contributing cause. Therefore the testimony, to which reference has been made, was properly excluded, because the necessary condition precedent was not established.

[2] If, as the trial court says, no witness, expert or otherwise, could venture an opinion as to the cause of the explosion, it was manifestly improper to permit the jury to speculate and to guess. We express no approval of the practice of permitting opinion testimony upon the very matter submitted to the jury for decision. However, this opinion testimony was admitted at the instance of the plaintiff, and the question of its admissibility is not material in this case.

The ruling of the learned trial judge is sustained by the language of the Supreme Court in Patton v. Texas Railway Co., 179 U. S. 658, loc. cit. 663, 21 S. Ct. 275, 277 (45 L. Ed. 361):

"Where the testimony leaves the matter uncertain, and shows that any one of half a dozen things may have brought about the injury, for some of which the employer is responsible, and for some of which he is not, it is not for the jury to guess between these half a dozen causes, and find that the negligence of the employer was the real cause, when there is no satisfactory foundation in the testimony for that conclusion. If the employee is unable to adduce sufficient evidence to show negligence on the part of the employer, it is only one of the many cases in which the plaintiff fails in his testimony, and no mere sympathy for the unfortunate victim of an accident justifies any departure from settled rules of proof resting upon all plaintiffs."

It follows that the judgment below must be affirmed; and it is so ordered.